EILEEN T. GALLAGHER, J.:
*1225 {¶ 1} Defendant-appellant, Michael McMillan, appeals his conviction and sentence. He claims the following three errors:
1. The trial court erred by sentencing the appellant to multiple consecutive sentences.
2. Trial counsel was ineffective by stipulating to the findings of the competency evaluation rendering the plea involuntary.
3. The trial court's sentence of 18 years was contrary to law.
{¶ 2} We find no merit to the appeal and affirm the trial court's judgment.
I. Facts and Procedural History
{¶ 3} In July 2016, McMillan and his fiancé, Andre Avent, babysat R.M., a two-year old child, for a period of several weeks. While the child was in their care, McMillan and Avent burned him from head to toe with cigarette lighters, whipped him with a phone cord, and burned and twisted his penis. The child was also malnourished and sustained a significant knee injury. Consequently, McMillan was charged with two counts of child endangering, four counts of felonious assault, and five counts of kidnapping. All the charges were first-and second-degree felonies.
{¶ 4} At defense counsel's request, McMillan was referred for a competency evaluation. Dr. Nicole A. Livingston, of the court psychiatric clinic, evaluated McMillan and concluded to a reasonable degree of psychological certainty that he was competent to stand trial.
{¶ 5} McMillan subsequently entered a plea agreement with the state wherein McMillan agreed to testify against Avent in exchange for the state's dismissal of several counts against him. At the plea hearing, McMillan's trial counsel advised the court that "Mr. McMillan fully understands everything that was stated by the prosecution," and that he believed McMillan's guilty pleas would be "voluntary, knowing and intelligent." (Tr. 4.) In accordance with the plea agreement, McMillan pleaded guilty to one count of child endangering, three counts of kidnapping, and one count of felonious assault.
{¶ 6} At sentencing, McMillan's trial counsel conceded that McMillan was competent to stand trial but asserted that his intellectual deficits should be considered as mitigating factors in sentencing. Counsel explained that Avent threatened, manipulated, and dominated McMillan. Indeed, Avent burned McMillan as well as the two-year old child, and McMillan was afraid to report the abuse to police. The court acknowledged that McMillan may have been a victim, but nevertheless concluded that he deserved to be punished for his role in the torture of the two-year old victim. The court explained:
This child was tortured. * * * This defendant was a participant, and in addition to being a participant[,] he had the opportunity to stop it; he had the opportunity to go to the police, to take the child out of the home. There were so many missed opportunities to half the harm that was happening to this child.
And that is also part of what's happening here, that whatever fear you had, what [trial counsel] is telling me, if those things are true, I understand the fear that you have, and understand that you may have been a victim yourself, but it *1226 still comes down to the fact that you're an adult and this was a two-year old child, and you had the chance to stop it and you didn't. And then, in addition, you participated. Even if you were a passive participant, you're still a participant by not getting the child out of the room.
Thus, the court determined that although McMillan was not the primary perpetrator, his involvement "still caused great harm."
{¶ 7} The trial court merged two of the kidnapping convictions with other offenses, and sentenced McMillan to six years on each of the remaining kidnapping, felonious assault, and child endangering convictions, to be served consecutively for an aggregate 18-year prison term. McMillan now appeals his convictions and sentence.
II. Law and Analysis
A. Consecutive Sentences
{¶ 8} In the first assignment of error, McMillan argues the trial court erred in imposing consecutive sentences because the court's findings are not supported by the record. In the third assignment of error, McMillan argues his 18-year consecutive prison sentence is contrary to law. We discuss these assigned errors together because they are interrelated.
{¶ 9} R.C. 2953.08(G)(2) provides that a reviewing court may increase, reduce, modify, or vacate the imposition of consecutive sentences where the court "clearly and convincingly" finds either that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."
{¶ 10} To impose consecutive sentences under R.C. 2929.14(C)(4), the trial court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender, that such sentences are not disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and that at least one of the following also applies:
(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.
(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
{¶ 11} To comply with R.C. 2929.14(C)(4), the trial court must make the findings in open court and on the record at the sentencing hearing. This means " 'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.' " State v. Bonnell , 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting State v. Edmonson , 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999).
{¶ 12} Further, the reviewing court must be able to discern that the record supports the trial court's findings. State v. Davis , 8th Dist. Cuyahoga No. 102639, 2015-Ohio-4501, 2015 WL 6550721, ¶ 21, citing Bonnell at ¶ 29. A trial court is not, however, required to state its reasons for its findings, nor is it required to give a *1227 rote recitation of the statutory language, "provided that the necessary findings can be found in the record and are incorporated in the sentencing entry." Bonnell at ¶ 37.
{¶ 13} In imposing the consecutive sentences in this case, the trial court stated:
The Court finds that this sentence is necessary to protect the public from future crime and to punish the offender, and that the sentences are not disproportionate to the seriousness of your conduct and the danger you pose to the public.
The Court also finds at least two of the offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses committed was so great or unusual that a single prison term would not adequately reflect the seriousness of your conduct.
Thus, the court made all the findings required by R.C. 2929.14(C) for the imposition of consecutive sentences at the sentencing hearing. The trial court also journalized the findings in the sentencing entry as required by Bonnell .
{¶ 14} McMillan argues, citing State v. Peak , 8th Dist. Cuyahoga No. 102850, 2015-Ohio-4702, 2015 WL 7075940, that the trial court must do more than merely state its findings on the record and in the journal entry. He contends that under our decision in Peak , the trial court was required to provide information to support its findings. However, we did not impose any additional sentencing requirements in Peak ; we simply applied Bonnell . Therefore, we reject McMillan's argument that the trial court must explain its findings on the record.
{¶ 15} McMillan also argues his conduct did not constitute the worst forms of the offenses. We disagree. The victim was a defenseless two-year old child, who suffered burns from head to toe. There was also evidence that McMillan and Avent whipped the child with a phone cord and burned and injured his penis by twisting it. These were not isolated acts perpetrated on an adult; they were a pattern of abuse that amounted to the torture of a defenseless two-year old child. Therefore, they were the worst forms of the offenses.
{¶ 16} McMillan also contends the record does not support the court's finding that consecutive sentences are not disproportionate to the seriousness his conduct. A defendant alleging disproportionality in felony sentencing has the burden of producing evidence that his sentence is disproportionate to sentences given to other offenders with similar records who have committed these offenses. State v. Wilson , 8th Dist. Cuyahoga No. 99331, 2013-Ohio-3915, 2013 WL 5005702, ¶ 16, citing State v. Breeden , 8th Dist. Cuyahoga No. 84663, 2005-Ohio-510, 2005 WL 315370, ¶ 81.
{¶ 17} McMillan failed to provide any explanation or evidence as to why or how his sentence is disproportionate to sentences imposed on similarly situated offenders. He thus fails to meet his burden of proving that his consecutive sentences are disproportionate to the seriousness of his conduct.
{¶ 18} Still, McMillan argues his consecutive sentences are contrary to law. However, a sentence is not clearly and convincingly contrary to law "where the trial court considers the purposes and principles of sentencing under R.C. 2929.11 as well as the seriousness and recidivism factors listed in R.C. 2929.12, properly applies postrelease control, and sentences a defendant within the permissible statutory range." State v. A.H. , 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, 2013 WL 3156521, ¶ 10, citing *1228 State v. Kalish , 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 18, overruled on other grounds , in State v. Marcum , 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231.
{¶ 19} R.C. 2929.11(A) governs the purposes and principles of felony sentencing and provides that a sentence imposed for a felony shall be reasonably calculated to achieve two overriding purposes of felony sentencing (1) to protect the public from future crime by the offender and others, and (2) to punish the offender using the minimum sanctions that the court determines will accomplish those purposes. Furthermore, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).
{¶ 20} R.C. 2929.12 delineates the seriousness and recidivism factors the sentencing court must consider in determining the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. The statute provides a nonexhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses. As relevant here, R.C. 2929.12 provides that the court should consider (1) whether "the physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of * * * the * * * age of the victim," and (2) whether "[t]he victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense." R.C. 2929.12(B)(1) and (2).
{¶ 21} As previously stated, the trial court found that McMillan's consecutive sentence was necessary to protect the public and to punish McMillan. (Tr. 39.) In finding that consecutive service was not disproportionate to the seriousness of McMillan's conduct, the court implicitly found that consecutive sentences were "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B). Therefore, the trial court complied with the requirements of R.C. 2929.11.
{¶ 22} With respect to R.C. 2929.12, the court found that McMillan "tortured" a small child, and that the "child was harmed to a great extent." Moreover, the court found that McMillan's conduct was aggravated by the fact that he, as an adult, had the power to protect the child victim but failed to do so. Thus, the trial court found that the victim's mental and physical injury was exacerbated by his tender age. R.C. 2929.12(B)(1) and (2). Therefore, the trial court made the findings required by R.C. 2929.12.
{¶ 23} The trial court also properly imposed five years of mandatory postrelease control, and each of the individual six-year sentences were within the applicable statutory ranges. McMillan was convicted of first- and second-degree felonies. R.C. 2929.14 provides that prison terms for first-degree felonies "shall be three, four, five, six, seven, eight, nine, ten, or eleven years" and second-degree felonies shall be "two, three, four, five, six, seven, or eight years." Therefore, because the six-year prison terms on McMillan's first- and second-degree felonies are within the applicable statutory ranges, the sentences are not contrary to law.
{¶ 24} The first and third assignments of error are overruled.
B. Competency Evaluation
{¶ 25} In the second assignment of error, McMillan argues his guilty pleas were involuntary because he was mentally incompetent and could not understand the *1229 proceedings. He contends his involuntary guilty pleas resulted from the ineffective assistance of counsel because his trial counsel erroneously stipulated to the competency evaluation.
{¶ 26} Generally, a guilty plea waives all appealable errors that may have occurred in the trial court, including a claim of ineffective assistance of counsel, unless the errors precluded the defendant from knowingly, intelligently, and voluntarily entering a guilty plea. State v. Davis , 8th Dist. Cuyahoga No. 103764, 2016-Ohio-7222, 2016 WL 5886794, ¶ 23, citing State v. Geraci , 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, 2015 WL 4043007, ¶ 14. Therefore, where a defendant has entered a guilty plea, the defendant can prevail on an ineffective assistance of counsel claim only by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. State v. Xie , 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992) ; Hill v. Lockhart , 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).
{¶ 27} McMillan argues his trial counsel was ineffective because he stipulated to the competency evaluation. By arguing that the stipulation resulted in involuntary guilty pleas, he implies he was not competent to enter the pleas knowingly, intelligently, and voluntarily. McMillan also contends his trial counsel should have requested an independent evaluation because counsel knew that the psychologist's observations were inconsistent with his own observations of him.
{¶ 28} The competency standard for pleading guilty is the same as competency to stand trial. State v. Mink , 101 Ohio St.3d 350, 2004-Ohio-1580, 805 N.E.2d 1064, ¶ 57 ; Godinez v. Moran , 509 U.S. 389, 397-398, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). A defendant is presumed competent to stand trial or plead guilty unless the defendant proves, "by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense * * *." R.C. 2945.37(G) ; State v. Neyland , 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 32, citing State v. Jordan , 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 28.
{¶ 29} McMillan argues he was not competent to plead guilty because he suffers from learning disabilities. However, a trial court may not find a defendant incompetent to stand trial or plead guilty solely because he suffers from a mental illness or intellectual disability. State v. Calabrese , 8th Dist. Cuyahoga No. 104151, 2017-Ohio-7316, 2017 WL 3635595, ¶ 16. The test for competency focuses entirely on the defendant's ability to understand the meaning of the proceedings against him and his ability to assist in his own defense regardless of the defendant's IQ. R.C. 2945.37(G) ; Neyland at ¶ 32.
{¶ 30} McMillan contends that Dr. Livingston's evaluation is not reliable because her findings were inconsistent with counsel's observations of him. McMillan told Dr. Livingston that he was never diagnosed with a learning disability or placed in special education classes, but his trial counsel informed the court that McMillan had an individualized education program ("IEP") in school because of a learning disability. McMillan also notes that he simultaneously reported to Dr. Livingston that he was never diagnosed with a learning disability but has received social security benefits since he graduated from high school because of his "disability of learning." He suggests these discrepancies render Dr. Livingston's evaluation unreliable. Although McMillan may have inaccurately *1230 reported to Dr. Livingston that he was never diagnosed with a learning disability, Dr. Livingston determined, based on her own evaluation, that McMillan had some learning deficits. She reported that McMillan was slow in making mathematical calculations and made some mathematical errors. She also noted that his "general fund of knowledge was slightly below average," and that his "ability to abstract was slightly below average."
{¶ 31} Nevertheless, Dr. Livingston also determined, to a reasonable degree of psychological certainty, that McMillan was able to understand the nature and objectives of the proceedings against him, and cited the following evidence to support this conclusion:
1. Following education, Mr. McMillan was able to identify his charges, the acts constituting such, their relative seriousness, and the potential penalties he could face should he be convicted.
2. Mr. McMillan was able to identify the roles and allegiances of important courtroom personnel with clarification and education.
3. Mr. McMillan was able to identify his available plea options and adequately define their meanings and consequences following education.
4. Mr. McMillan, following education, demonstrated an acceptable understanding of the plea bargaining process including the benefit to the defendant and the right sacrificed by the defendant.
5. Mr. McMillan manifested an appreciation for the adversarial nature of the legal process against him.
{¶ 32} Dr. Livingston also determined, to a reasonable degree of psychological certainty, that McMillan was able to assist counsel with his defense, and cited the following evidence to support this conclusion:
1. Mr. McMillan reported intent to disclose openly and honestly to his attorney and heed his attorney's legal advice. He reported willingness to trust his attorney.
2. Mr. McMillan's thought processes and speech were coherent and organized. Therefore, he would be capable of providing his attorney with pertinent information, testifying, and challenging prosecution witnesses.
3. Mr. McMillan was able to adequately appraise his legal situation. He is capable of evaluating legal advice and making reasoned decisions.
4. Mr. McMillan demonstrated adequate attention, concentration, and memory indicating he would be able to follow and process courtroom events.
5. Mr. McMillan, as demonstrated by his behavior during the evaluation, would be capable of conducting himself in an appropriate manner and tolerating the stress of a trial.
Therefore, although McMillan may have had a learning disability, there was credible evidence that he was able to understand the meaning of the proceedings against him and able to assist in his own defense.
{¶ 33} McMillan fails to identify how his trial counsel was ineffective. Both counsel and Dr. Livingston concluded that McMillan was competent to stand trial and enter his guilty pleas. Indeed, after discussing the terms of the plea agreement with McMillan, counsel advised the court that "Mr. McMillan fully understands everything that was stated by the prosecution, and * * * I believe that the plea that will be forthcoming from him at this time will be voluntary, knowing and intelligent." (Tr. 4.) At the sentencing hearing, counsel conceded that "[McMillan] was competent and does understand the proceedings here * * *." In short, there were no indicia of incompetency. Therefore, McMillan cannot demonstrate that his trial counsel was ineffective *1231 because he stipulated to the competency evaluation or failed to request an independent evaluation.
{¶ 34} The second assignment of error is overruled.
{¶ 35} Judgment affirmed.
KATHLEEN ANN KEOUGH, A.J., CONCURS;
MELODY J. STEWART, J., CONCURS IN JUDGMENT ONLY