[Cite as *State v. Eick*, 2011-Ohio-1498.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Sheila G. Farmer, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Julie A. Edwards, J. |
| -vs- | |
| | Case No. 2010 CA 00267 |
| DEAN A. EICK | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:            Criminal Appeal from the Court of Common
                                    Pleas, Case No.  2010 CR 00462


JUDGMENT:                           Affirmed


DATE OF JUDGMENT ENTRY:             March 28, 2011


APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

JOHN D. FERRERO                     BERNARD L. HUNT
PROSECUTING ATTORNEY                2395 McGinty Road, NW
RENEE M. WATSON                     North Canton, Ohio  44720
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

{¶1}   Appellant Dean A. Eick appeals his conviction entered in the Stark County Court of Common Pleas on three counts of gross sexual imposition.

### STATEMENT OF THE FACTS AND CASE

{¶2}   On April 3, 2010, Appellant Dean Eick, went to the Wal-Mart in Massillon, Stark County, Ohio. Appellant wandered around the store for approximately two hours, during which time he fondled the buttocks of two girls, eleven and twelve years old. Appellant first touched "Jane Doe I" on the buttocks in the magazine department. He then followed her to the picture frame aisle and again fondled her buttocks. Appellant victimized "Jane Doe II" in the electronics department, also by fondling her buttocks.

{¶3}   When Massillon police officer David McConnell arrived at the scene, he noted that Appellant had an erection and smelled strongly of alcohol. Appellant told the officer he suffers from panic attacks and sometimes stumbles. He denied touching the girls.

{¶4}   As a result of the above events, Appellant was arrested.  On May 3, 2010, the Stark County Grand Jury indicted Appellant on three counts of gross sexual imposition, in violation of R.C. §2907.05(A)(4), felonies of the third degree.

{¶5}   Appellant pled not guilty to the charges and his case was assigned to Judge Frank Forchione in the Stark County Court of Common Pleas.

{¶6}   On May 24, 2010, Appellant entered an additional plea of Not Guilty by Reason of Insanity.

{¶7} By Judgment Entry filed June 1, 2010, the trial court therefore ordered an evaluation of Appellant's mental condition at the time of the offense and ordered the Akron Psycho-Diagnostic Clinic to conduct the evaluation.

{¶8} Holly Trivett, a forensic mental health specialist, conducted an information gathering interview and the evaluation was completed by Dr. Kenneth Gruenfeld.

{¶9} On July 20, 2010, Appellant filed an Objection to Sanity Evaluation of Dr. Gruenfeld; Request for Evidentiary Hearing on Sanity Report; Motion for Appointment of Second Examiner for a Sanity at the Time of the Offense Evaluation.

{¶10} On August 9, 2010, a hearing was held on the matter during which the state presented testimony from Dr. Gruenfeld. Appellant testified on his own behalf.

{¶11} Dr. Gruenfeld explained the protocol for a "sanity at the time of the act" evaluation. He explained that first a forensic mental health specialist from Summit Diagnostic Center, in this case Trivett, conducts a basic psychosocial history. This includes gathering information regarding family history, educational history and mental health and substance abuse history. Dr. Gruenfeld then receives a copy of the write up, after which he conducts his own interview and any necessary psychological testing. Dr. Gruenfeld stated this was the protocol he followed in Appellant's case.

{¶12} Dr. Gruenfeld further explained that his obligation in a "sanity at the time of the act" evaluation is to first determine if Appellant suffers from severe mental disease or defect, and if so, whether that defect or disease prevented Appellant from knowing the wrongfulness of his actions. In Appellant's case, Gruenfeld stated that he looked at the information gathered by Trivett and his own interview focused on records from the Crisis Intervention and Recovery Center where Appellant had been treated in the past,

as well as Stark County Jail records. He also administered the Miller Forensic Assessment of Symptoms Test (M-FAST).

{¶13} Dr. Gruenfeld's findings were that Appellant has a history of depression, panic attacks and anxiety beginning at age 30 and has received various medications for these conditions. Additionally, Appellant has a history of alcohol dependence.

{¶14} During Dr. Gruenfeld's interview with Appellant, Appellant alleged that at the time of the incident, he was in the grip of a panic attack and thus does not remember committing the crimes. Appellant explained that the night before the incidents, he was staying at his sister's home and that he consumed "4-6 pints" of beer and then fell asleep. The next morning, he consumed 1 or 2 more pints and then decided to go to Wal-Mart. Once at Wal-Mart, Appellant reported that he felt a panic attack building as he was browsing in the meat department. He continued to walk around, eventually going into the electronics, small appliances and then pharmaceutical aisles, where he was arrested.

{¶15} Appellant claimed he was in Wal-Mart for 1-2 hours, and during that time the panic attack escalated. He reported his heart was racing and he was sweating and trembling.  Dr. Gruenfeld questioned Appellant as to everywhere he was while he was in the store, which Appellant had no trouble recalling. In fact, Appellant recalled everything about that day except touching the girls. He denied being confused about anything that day other than why he was arrested. Additionally, Appellant reported he had never experienced memory loss as the result of a panic attack and that "this was the first time."

{¶16} When Dr. Gruenfeld asked Appellant if he knew it was illegal to fondle the minor girls, Appellant stated: "Yes. Yes. Of course I knew that. I knew it was wrong. That is pretty sick to do that. I never did that before and I knew it was wrong to do it then. I don't remember it happening and I don't believe it happened. I knew it was wrong to do something like that, yes, of course."

{¶17} Dr. Gruenfeld concluded to a reasonable degree of psychological certainty that Appellant does suffer from severe mental diseases, specifically anxiety, depression and alcohol dependence. He concluded, however, that these diseases did not prevent Appellant from knowing the wrongfulness of his actions at the time of the offenses.

{¶18} Following Dr. Gruenfeld's testimony, the State rested. Appellant indicated he wanted to testify on his own behalf. The trial court advised Appellant he did not have to testify, and then took a recess so Appellant could discuss the matter with his counsel.

{¶19} Appellant chose to take the stand. During his testimony, Appellant took issue with Dr. Gruenfeld's report regarding the amount and type of alcohol he consumed the day in question. Appellant testified that he told Trivett he consumed 3-4 ounces of vodka at 2 a.m. and 2-4 more ounces at 6 a.m. Although Dr. Gruenfeld's report indicated that the M-FAST, was administered, Appellant denied being tested. He claimed that Dr. Gruenfeld never asked him any questions about the panic attack he had in Wal-Mart. Additionally, Appellant denied saying he has never experienced memory loss as a result of panic attacks and claimed Dr. Gruenfeld had misquoted him in regard to his awareness of the wrongfulness of his actions.

**{¶20}** At the conclusion of the hearing, Appellant argued that Dr. Gruenfeld's evaluation was inconsistent and untrustworthy. He therefore requested that the trial court order a second evaluation.

**{¶21}** By Judgment Entry filed August 13, 2010, the trial court denied Appellant's Motion for Appointment of Second Examiner for Sanity.

**{¶22}** On August 13, 2010, Appellant changed his plea to no contest to the charges. The trial court found him guilty, convicted him and sentenced him to five years on each count, to be served concurrently. (See Judgment Entry filed August 23, 2010).

**{¶23}** Appellant now appeals to this Court, assigning the following sole error for review:

## ASSIGNMENT OF ERROR

**{¶24}** "I. THE TRIAL COURT COMMITTED ERROR WHEN IT FAILED TO GRANT THE DEFENDANT'S MOTION FOR APPOINTMENT OF A SECOND EXAMINER FOR A SANITY AT THE TIME OF THE OFFENSE EVALUATION."

### I.

**{¶25}** In his sole assignment of error, Appellant claims that the trial court abused its discretion in denying his request for a second psychological evaluation. We disagree.

**{¶26}** Appellant herein argues that Dr. Gruenfeld's evaluation contains inconsistencies which make it untrustworthy.

**{¶27}** The trial court, in its August 13, 2010, Judgment Entry, reviewed Appellant's claims and found that any discrepancies were not critical for its decision during the sanity report.

**{¶28}** The definition for the legal insanity standard is set forth in R.C. §2901.01(A)(14). A person is "not guilty by reason of insanity" if the person proves that at the time of the commission of the offense, he did not know, as a result of a severe mental disease or defect, the wrongfulness of his acts. Notably, the standard for competency is different, in that it relates to the defendant's present mental condition and his ability to understand the nature of the proceedings against him and to assist his counsel in his defense. See R.C. §2945.37.

**{¶29}** NGRI is an affirmative defense that must be proved by the defendant by a preponderance of the evidence. *State v. Jennings*, 10th Dist. No. 05AP-1051, 2006-Ohio-3704, 2006 WL 2022235, ¶ 10; *State v. Taylor,* 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 64; R.C. 2901.05(A). With an insanity defense, the defendant must persuade the trier of fact that at the time of the commission of the offense, he did not know the wrongfulness of his acts, as a result of a severe mental disease or defect. *Jennings* at ¶ 10. The proper standard for determining whether a defendant has successfully demonstrated this defense and thus is entitled to an NGRI instruction is whether he has " ' "introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue." ' " *State v. Thomas,* 10th Dist. No. 06AP-675, 2007-Ohio-1171, 2007 WL 778606, ¶ 11, quoting *State v. Tantarelli* (May 23, 1995), 10th Dist. No. 94APA11-1618, 1995 WL 318730, quoting *State v. Melchior* (1978), 56 Ohio St.2d 15, 20-21, 10 O.O.3d 8, 381 N.E.2d 195.

**{¶30}** Pursuant to R.C. §2945.371(A):

{¶31} "If the issue of a defendant's competence to stand trial is raised or if a defendant enters a plea of not guilty by reason of insanity, the court may order one or more evaluations of the defendant's present mental condition or, in the case of a plea of not guilty by reason of insanity, of the defendant's mental condition at the time of the offense charged."

{¶32} Based on the wording of R.C. §2945.371, the ordering of any second competency evaluation is a matter within the discretion of the trial court." *State v. Bailey* (1992), 90 Ohio App.3d 58, 67. In order to find that the trial court abused its discretion in denying Appellant's request for a competency re-evaluation, we must find that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217.

{¶33} The discrepancies that Appellant focuses on are the amount of time Dr. Gruenfeld spent interviewing him at the jail and the actual amount of alcohol he consumed the night before and the morning of the day in question.

{¶34} Dr. Gruenfeld stated that his interview with Appellant lasted 51 minutes, and that he rounded that number off to one hour on his report. When confronted with a record from the jail which reflected that he had spent only 27 minutes with Appellant, Dr. Gruenfeld maintained that he had in fact spent 51 minutes with Appellant. Additionally, he stated that during his interview with Appellant, he took seven pages of notes, which he produced for the trial court. (T. at 17-18).

{¶35} The trial court found that it was irrelevant whether the actual time spent with Appellant was 27 minutes or 51 minutes, finding that Dr. Gruenfeld was able to produce ample notes from the interview.

**{¶36}** As to the discrepancy as to the amount of alcohol Appellant admitted to consuming, such discrepancy appears to arise due to Appellant providing two different accounts to Dr. Gruenfeld and Ms. Trivett.  Further, the trial court found that the amount of alcohol consumed was not relevant because voluntary intoxication would not relieve him of culpability for his crimes.

**{¶37}** Finally, and most importantly, the trial court found that Appellant did not deny his quote to Dr. Gruenfeld indicating his knowledge that touching young girls in a sexual manner was wrong.

**{¶38}** Upon review, we have reviewed the record in this matter and find any discrepancies in the testimony go to the credibility of the witness, which the trial court was in the best position to assess, and does not necessarily result in the trial court discrediting any, let alone all, of the witness's testimony.

**{¶39}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, certiorari denied (1990), 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 183. The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, 1997-Ohio-260.

**{¶40}** Based on the foregoing, we do not find the evaluation in this matter to be unreliable and further do find that the trial court did not abuse its discretion in denying Appellant's request for a second evaluation.

**{¶41}** Appellant's sole assignment of error is overruled.

**{¶42}** For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is affirmed.

By: Wise, J.

Farmer, P. J., and

Edwards, J., concur.

_____

_____

_____

                                   JUDGES

JWW/d 0316

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee                 :
                                       :
-vs-                                   :            JUDGMENT ENTRY
                                       :
DEAN A. EICK                           :
                                       :
    Defendant-Appellee                 :            Case No. 2010 CA 00267


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

Costs assessed to Appellant.


_____

_____

_____

                         JUDGES